Joseph Wilbur Jr. *Pro Se*
23814 Havasu Dr.
Daphne, AL 36526
(202) 431-8398
careersafety@outlook.com

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF ALABAMA

JOSEPH WILBUR JR,                    ) Case No.: 17-276
                                     )
            Plaintiff,               ) FTCA – Federal Tort Claims Act
                                     )
vs.                                  )
                                     )
UNITED STATES OF AMERICA,            )
                                     )
            Defendant                )
_____)

Edith H. Jones, Fifth Circuit Judge, *Gate Guard Services vs. US Department of Labor* (July 2, 2015) stated, "It is often better to acknowledge an obvious mistake than defend it. When the government acknowledges mistakes, it preserves public trust and confidence. It can start to repair the damage done by erroneously, indeed vindictively, attempting to sanction an innocent business." *Gate Guard L.P. et al. vs. US Department of Labor*

Plaintiff Joseph Wilbur Jr. ("Mr. Wilbur" or "Plaintiff") *Pro Se*; files this Federal Tort Claims Act (FTCA) complaint against the sole Defendant, United States of America. The complaint alleges a persistent, ongoing pattern of internal policy/or regulatory violations, retaliatory prosecution, unfair labor practices, negligence, bad faith investigation, abused procedural process, utter failure to abate the condition, and intentional infliction of emotional distress, which commenced on or about November/December 2012 and has

continued uninterruptedly until February 5, 2015, causing cumulative harm to the Plaintiff.

The complaint alleges the Defendant's conduct violated clearly established statutory or constitutional rights, of which a reasonable person would have known. The occurrences of jurisdictional facts occurring under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680 *et seq.,* against the United States of America that could not have been filed before those jurisdictional facts occurred. Plaintiff alleges the following:

**SUMMARY OF ACTION**

I.   **Continuing violation:**

    a. Defendant took an exclusive direction, and started a frivolous, retaliatory investigation against the Plaintiff, but also from the agency's continued unrelenting prosecution of Mr. Wilbur, and failure to adhere to agency's own policies and regulations. The violations have continued over a period of many years.

    b. United States continued negligence by government employees in allowing a manager to continue harassing employees in Mobile, AL OSHA office and failing to exercise due care in abating the situation.

    c. Thru the negligent actions of the Defendant, a failure to exercise discretion, and a clear violation of self-imposed statute ("mandatory"), regulation, or policy that prescribed a specific course of action, the Plaintiff's life as a whole, has been destroyed.

**November/December 2011** Area Director (AD) for Mobile, AL Occupational Safety and Health Office performed a crude and sexually obnoxious behavior, that lead to him dropping down on both knees (sitting position), with his hand simulating cupping a girls rear; his back lying horizontally flat on the floor, and with arms moving up and down his penis; stated, "this is how he liked have sex with young girls." This event took place in the Area Directors Office. This unwelcomed action was later reported to the NCFLL union steward, because I deemed it morally offensive, I was new to that office, and thought the union representative was the individual to inform. Union representative told the plaintiff that the Area Director was trying to motivate me as a Safety and Health Compliance Officer, nothing else was done after the reporting.

**January 2012** new employee (DOE 1) went through the same initiation, this time the inappropriate behavior was conducted in the copier room located at the Mobile, AL OSHA Office. The AD again dropped down on both knees, and began simulating have sex in a crude position. This act was reported to the Assist AD (AAD), again nothing was done about the actions of the AD. DOE 1 consequently was later fired, due to learned behavior from the area director. DOE 1 showed explicative pictures on his personnel cell phone, in which DOE 1 had stated that the AD had insisted on seeing more pictures at his arbitration hearing. Plaintiff did not agree with what DOE 1 did, but the action of the AD was continuous and offensive. Plaintiff pleaded with the union steward to allow him to be heard at DOE 1 meeting with the Regional Director to disclose the events that happened. The Plaintiff was told his testimony was not necessary. Again, the actions of the AD were offensive and went unchecked.

**July 2012**, I contacted the Regional Office regarding a climate survey. Plaintiff didn't realize the employee conducting the survey represented management and not the rights of the employees. Plaintiff informed the individual of the actions of the AD (DOE 1) and Plaintiff displeasure and offensive nature regarding said acts. The Defendant who mostly seemed uninterested in what the Plaintiff had to say spent a vast majority of the interview sleeping. Once Defendant awoke, he tried to convince me that the actions of the AD didn't constitute sexual harassment, only that the AD was showing his flexibility, even illustrating the gesture himself. The management official, once done interviewing me, left the office and walked directly into the AD's office, closed the door and remained inside for briefings. Management official later wrote a report stating I had not witnessed any acts of sexual harassment or lewd behavior conducted by the Area Director for Mobile, Al Occupational Safety and Health Office.

**December 2012** new female hire (Doe 2) was called to the AD's office on a job related matter, inexplicably, was shown graphic picture on the AD's computer located in Mobile, AL. The new hire text me a message stating that she had been shown explicit pictures by the AD, and felt very uncomfortable over the situation, and needed help filing an EEOC complaint. Plaintiff helped the female co-worker contact the necessary people, emailed the Regional Director in Atlanta, and copied it to our union steward. In that email, I discussed my distain for the actions of the AD, and did not appreciate the culture of the office. The AD was investigated by the Department of Labor. The AAD for Mobile, AL Department of Labor, not Office of Inspector General, conducted the investigation and found no material (cookies) on the AD's computer

leading to any inappropriate sites. DOE 2 was later forced to resign from office. The Defendant stated DOE 2 had violated agency policy.

**January 3, 2013** Plaintiff, sent an email to the Defendant regarding code of conduct and my utter disgust over the culture in the office. Plaintiff stated, " As a professional I am offended, ashamed, and embarrassed by the things that have taken place in this office. The question I have to ask as a Compliance Officer; how is it that an employee is investigated, scrutinized, prejudged, and discredited for showing pics in the workplace; consequently fired for his actions, only to have the same supervisor "Joseph Roseler" who led the charge to have him removed from office by armed Home Land Security Officer in full armed gear/weapon, show a female "New Hire" Compliance officer, on a government computer, explicit pics?" And nothing happens to him.

**February 27, 2013** AAD warned/or threaten the Plaintiff not to continue making waves in the office as a result of co-workers EEOC complaint, and that the AAD had connection and could help the Plaintiff get a management position within the Agency. Plaintiff's interpretation of the meeting, shut my mouth and keep quite, and you get a management position. This violated the Collective Bargaining Agreement (CBA) Article 35 – Harassing Conduct and workplace violence, which made it an unfair labor practice for the Defendant "to interfere with, restrain, or coerce employees in the exercise of the rights." This includes Threaten employees with adverse consequences if they engage in protected, concerted activity. It includes circumstances where a single employee seeks to initiate, induce, or prepare for group action, as well as where an employee brings a group complaint to the attention of management. Activity is "protected" if it concerns employees' interests as employees.

**March 7,2013** Plaintiff was verbally admonished for failing to conduct an inspection although Plaintiff had two ongoing fatality investigations pending and according to DOL policy fatality investigations took precedence over any other inspection.

IV. Enforcement Priority Criteria, "Generally, priority of accomplishments and of assigning staff resources for inspection categories is shown below: Field Operating Manual 2-4

    1. Imminent Danger

    2. Fatality/Catastrophe

    3. Complaints/Referrals

    4. Programmed Inspections

**June 20, 2013** Plaintiff received an unfavorable mid-year performance evaluation that did not contain anything of substance. It did not list any deficiencies needed for improvement, or accolades for a good job as required by Collective Bargaining Agreement: Article 43 – Performance Management System Section 5 – Improving unsatisfactory Performance. The Plaintiff was told to simply sign it, and Mr. Wilbur refused.

    1. Any employee not meeting the performance standards of any one or more critical elements will be promptly notified.

Plaintiff began noticing a difference in behaviors of fellow co-workers, negative performance evaluations, delayed travel claim reimbursements, challenges to sick leave, and other work related issues. After the Plaintiff learned that management was reviewing case files, and traveling to inspection sites previously inspected by the Plaintiff. At that time I suspected, not confirmed, that the Defendant had initiated an investigation, and the union was aware of the internal investigation.

**June 4, 2013** Plaintiff sent a congressional letter to Senator Session of the State of Alabama regarding the culture in the office.

**July 2013**, I sent my resignation letter to the Department of Labor due a hostile work environment, and an agency blatant tolerance of management harassing employees in the workplace. Plaintiff was cornered in the break room by the AAD who was refusing to allow me sign out early/or leave and utilize my comp time. AAD stood in the doorway yelling and making a scene to initiate contact. I simply stated, I signed out, I am using comp time, allow me to pass. This went on for a few minutes until others compliance officers started to gather. The AAD then allowed me to pass. NLRB section 8(a)(1): constructive discharge. See Attachment (C) pg. 5

**February 5, 2015** I received notification that the U.S. Citizenship and Immigration Services rescinded the GS 13-0018 Safety and Health Manager position with a salary of 82,642.00 per yr. as a Regional Manager, due to an investigative report released by the United States (Department of Labor). In that report it listed several specifications and allegations that the Plaintiff had committed employee misconduct/or negligence in the workplace. Along with that letter, USCIS gave me a copy of the DOL investigative report in which the Plaintiff had requested thru FOIA request from the Defendant, which as this date is still being stonewalled by the Defendant.

**June 01, 2017** As a result of the investigation and its impact on the Plaintiff (employee misconduct, trustworthiness) it has made finding meaningful employment extremely difficult if not impossible, with a salary to sustain established life style prior to forced resignation, the Plaintiff home was sold through the courts for foreclosure, lost his vehicle, and has accumulated several bills,

including increasing monthly arrears for child support, that are continuing to grow. This abuse has to end, and has been ongoing over a period of many years.

## **Jurisdictional and Venue**

1.     Southern Alabama District court exclusive jurisdiction to hear FTCA claims 28 U.S. Code § U.S.C. 1402(b) and 1346(b).

2.     The court has personal jurisdiction over the United States of America in connection with the Mobile Occupational Safety and Health Office located at 1141 Montlimar Dr. Ste 1006, Mobile, AL 36609

3.     Venue is proper in the Southern District of Alabama pursuant to 28 U.S.C. § 1346 in that all, or substantial part of the acts and omissions occurred within this district and Plaintiff resides within Baldwin County.

## **PARTIES**

4.     Plaintiff Joseph Wilbur Jr. is, and at all times relevant was, a citizen of Alabama working and residing at 23814 Havasu Dr. Daphne, AL 36526, Baldwin County.

5.     Defendant United States of America, through its agency, the U.S. Department of Labor, operates the Mobile Occupational Safety and Health Office located at 1141 Montlimar Dr. Ste 1006, Mobile, AL 36609 is sued for Plaintiff's personal injuries caused by the continuing negligent or wrongful acts or omissions of its directors, officers, operators, administrators, agents, investigators, and staff.

6.     Defendant at all times, employees were acting within the scope of their office or employment under where the United States of

America, if a private person, would be liable to Plaintiff in accordance with the laws of the State of Alabama. *See* 28 U.S. Code § U.S.C. 1346(b).

## FACTUAL ALLEGATIONS

7.   On October 19, 2016, Mr. Wilbur mailed an administrative claim under the Federal Tort Claims Act 28 U.S.C. § 2675(a), comprised of completed Standard Form 95 (signed), and supporting materials, to the appropriate Federal agency, United States of America (Department of Labor ("DOL")) Tort Claims Unit. See Ex. A (SF 95).

8.   The DOL's Tort Claims Unit received the claim on October 2016. Because the earliest tortious action described February 5, 2015, Plaintiff's claim was timely filed. See 28 U.S.C. § 2401(b).

9.   No action by the Defendant within six months statue of limitations. Plaintiff filed a Federal court complaint, six months after presenting the claim were no agency action has been taken. See 28 U.S.C. § 2401(b)

10.   PROVISO: 28 U.S. Code § 2680(h): Exception with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.

11.   Defendant's governmental conduct violated the Constitution, a statute, and other applicable regulations, against the Plaintiff. These actions within a Federal Agency cannot be

held as a discretionary function; "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984).

12. Defendant is not above the law and does not possess discretion to violate constitutional rights or federal statutes. *Sutton v. United States*, 819 F.2d 1289, 1293 (5th Cir. 1987).

13. Infliction of intentional Emotional Distress (Outrage); *Restatement (Second) of Torts* § 46 (1948). *American Road Service Co. v. Inmon,* 394 So.2d 361 (Ala.1980).

14. Plaintiff's contractual or statutory right to continued employment is a property interest falling within the scope of the Fourteenth Amendment's protection.

15. *Meyer v. Nebraska* (1923), the Court stated that liberty "denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience and generally to enjoy those privileges long recognized as essential to the orderly pursuit of happiness of free men."

16. Kassaye v. Bryant College, 999 F.2d 203 (1 Cir. 1993) (serial continuing employment discrimination violation which may toll running of statute of limitation is described as a number of discriminatory acts emanating from same discriminatory animus, each act constituting a separate wrong). Plaintiff alleges

1    continuing violation harassment, intimidation, and retaliatory

2    actions.

3    17.    Defendant breached the Collective Bargaining Agreement. See

4    Attachment (F).

5    a) Collective Bargaining Agreement existed between

6    the employer and the National Council of Field

7    Labor Locals (NCFLL) Union;

8    b) CBA was breached by the Defendant, causing injury

9    to Plaintiff;

10    c) Union breached its duty of representation owed to

11    Plaintiff.

12    d) Union (DOL employee's) officials provided no

13    representation. Plaintiff had been prevented from

14    exhausting his contractual remedies by the

15    union's wrongful refusal to process the grievance.

16    NFCLL members where alleged of wrongdoing in the

17    grievance.

18    18.    Defendant in collusion with NCFLL (DOL employee) personnel

19    provided an unacceptable injustice in its lack of union

20    representation for the Plaintiff in its internal investigation

21    procedures acted in such a dishonest, arbitrary, or

22    perfunctory fashion as to breach its duty of fair

23    representation. *Vaca v. Sipes,*386 U.S. at 185, 87 S.Ct. at

24    914.

25    19.    July 2015, US Department of Labor was cited by the Fifth

26    Circuit, Texas Southern District court for its shoddy

27    investigation into Gate Guard Services LP, "the DOL pursued

28    the penalty against Gate Guard even after realizing how shoddy

its investigation had been and how many deviations from
internal policy were made in pressing the charges. Even if the
litigation was colorable at the outset, it was revealed as
frivolous through the discovery process, but instead of acting
responsibly and abandoning the case, the DOL continued its
prosecution despite overwhelming contradictory evidence."
Similar tactics employed against Mr. Wilbur.

    a) Investigator was untrained

    b) Evidence tampering

    c) Violated its own internal procedures and policies

    d) Stonewalling efforts of the agency

    e) Excluding and/or unwillingness to use exculpatory
       evidence

    f) Overly aggressive tactics

    g) Shoddy investigation

    h) Numerous mistakes in the findings

20.    At all times relevant to this case, the directors, officers,
administrators, employees, investigators, and staff were
employed by and/or acting on behalf of the Defendant.

21.    The directors, officers, administrators, employees,
investigators, and staff negligently and/or recklessly
directly and proximately caused disastrous financial hardship,
physical and mental injury to Mr. Wilbur, including both acts
of omission and acts of commission.

22.    As a direct and proximate result of Defendant's negligence,
disastrous financial hardship include sustained indebtedness;
pending home foreclosure, back-payment child support, vehicle
repossession, student loans defaults, martial strain, and

other damages, and will continue to incur these expenses, and
other damages in the future; he was forced to endure the
humiliation, shame, suffering, and mental anguish, and will
continue to endure such pain, suffering and mental anguish in
the future; he has suffered a loss of the enjoyment of life,
and will continue to suffer a loss of the enjoyment of life in
the future; and he has lost wages, and will continue to loss
wages in the future.

23.    Defendant disclosed inaccurate information, when the factual
basis for it had eroded and chose to send that erroneous
information to other federal agencies, to include Office of
Personnel Management (OPM), and US Citizenship and Immigration
Services (USCIS). These actions violated agency
policy/Collective Bargaining Agreement.

24.    Defendant disregarded/or ignored facts that were favorable to
the Plaintiff.

25.    Plaintiff exhausted administrative remedies as to these
claims.

**<u>FIRST CAUSE OF ACTION</u>**
**ABUSE OF PROCESS**
**(Against the United States of America for damages)**

26.    Plaintiff incorporates by reference the allegations of the
original complaint as though set forth herein, violated
Defendants own internal policies and/were not properly
followed and constitutionally inadequate, as follows. 226 F.3d
996, 1002 (9th Cir. 2000); 28 U.S.C. § 2680(h)

a) Plaintiff while conducting protected activities,
suffered retaliation for filing a complaint.

b) Defendant did not provide a harassment free environment.

c) Defendant failed to provide procedural process in the disclosure of exculpatory evidence. Violating the law, which requires the disclosure of exculpatory evidence when such evidence is material to guilt or innocence. *Giglio v. United States*, 405 U.S. 150, 154 (1972)

d) Defendant has an organizational tolerance towards management in regards to sexual harassment/intimidation/retaliation in the work place.

e) Defendant grossly violated Plaintiffs First and Fifth Amendment rights. Plaintiff, like many employees of the Department of Labor had a right to voice concerns in regards to reporting inappropriate behavior of supervision in the workplace, and should have been afforded every opportunity to defend themselves against criminal charges, especially when those charges originated from ulterior motives.

f) Defendant chose to protect the Area Directed located in Mobile, AL even thou he established a pervasive pattern of harassing behavior. In this instance, the government's failure to act was the result of simply ignoring an obvious problem, namely, where only the government was in a

realistic position to address the problem based on mandatory policy and human decency.

27.   Timing of the OIG investigation was initiated for an improper purposes, such as to harass the Plaintiff or to put pressure on him to resign from office, or for any other purpose reflecting on the bad faith of this particular investigation.

28.   Defendant intentionally deceived or/obstructed Plaintiff from competing for employment by giving misleading testimony to OPM/OIG investigators with the intent to impede employment.

29.   Defendant punished the Plaintiff for refusing to obey an order that required the violation of law. Directors of the Defendant require employees to issue safety violations for the sole purpose of maintaining internal Departmental quotas, to win a regional trophy.

   a) Plaintiff was ordered not to leave business until a violation was found. No matter how long it took, even if the company was incompliance.

30.   Defendant ulterior motive or purpose initiated internal investigation for purposes of deliberate harassment, intimidation, or abusive to the Plaintiff.

31.   The requested element of malice or ulterior motive should be inferred the Defendant's willful abuse of internal policy/or regulations.

32.   If such inference fails, malice specifically exists in that the Defendant acted with malice, egregious attitude, and a conscious disregard for the Plaintiffs rights in that their ulterior purpose, blatantly disregarding the Collective

1    Bargaining Agreement ("CBA"), and other Federal Code of

2    Regulations.

3  33.    Defendant willfully and wrongfully created the purported

4    internal investigation and willfully and wrongfully lost case

5    files, refused disclosure of internal investigation, placed

6    Plaintiff under surveillance, forced Mr. Wilbur employment

7    resignation, and misrepresented information, which lead to a

8    charge of perjury, incompetency, untrustworthiness, and

9    employee misconduct. These actions resulted in Mr. Wilbur

10    being barred from federal employment, and suffering harm.

11  34.    Defendant failed to notify Plaintiff initial/conclusion of the

12    internal investigation, not allowing opportunity to defend

13    himself.

14  35.    Defendant failed to adhere to procedural fairness throughout

15    the course of the investigation (before/or at conclusion).

16  36.    The Defendant breached its Professional Duty of Care to Mr.

17    Wilbur by not adhering to its own internal policy.

18  37.    Defendant violated Plaintiff Due Process, depriving the

19    Plaintiff of certain interests: liberty, or property

20        I.  Defendant failed to follow fair procedures; failed to

21            provide accurate results; failed prevent the wrongful

22            deprivation of interests.

23                a) Defendant at the onset of the investigation failed

24                   to provide notice of the charges against Mr.

25                   Wilbur.

26                b) Defendant accused the Plaintiff of violating

27                   rules/or policy, which were standard agency

28                   practice.

FTCA – Federal Tort Claims Act - 16

c) Defendant during Merit System Protection Board hearings stated, "(DOL Office of the Solicitor) will never settle with the Plaintiff", exculpatory evidence ignored, and refused to rebut the charges.

d) Defendant provided erroneous evidence supporting its charges against the Plaintiff.

e) Defendant explanations to perspective employment for the basis of any adverse finding were misleading, and ulterior motive of retaliation.

38.   As a direct and proximate result of the acts of the Defendant abuse of internal policy herein, Plaintiff is entitled/or claims under the law of the State of Alabama. These actions caused harm to the Plaintiff.

39.   The Defendant is liable pursuant to 28 U.S.C 1346(b)(1).

## SECOND CAUSE OF ACTION
### NEGLIGENCE
**(Against the United States of America for damages)**

40.   Plaintiff incorporates by reference the allegations of the original complaint as though set forth herein, violates Defendants own internal policies.

a) Investigation was conducted with the assistance of the AAD's (biased) for Mobile, AL violated investigator independence policy. AAD, a manager who was closely connected with the matter being investigated. This was inconsistent with Defendant policy and different in how it handled the AD inappropriately showing a female co-worker

explicit pictures on a government computer.  The
Defendant did not have an independent forensic
analysis of the computer; Agency simple had the
AAD check the cookie history.

    b) Ignoring verified facts of the investigation.

    c) Ignoring verified conclusions of Assistant United
States Attorney for Southern Alabama (AUSA) Cherry
regarding Plaintiff conducting investigations.

    d) Lack of thoroughness in the investigation.

    e) Unfamiliarity/or failure to review all relevant
documents in the investigation.

    f) Investigator did not independently verify evidence
that contradicted the Defendant allegations.

    g) Intent of the investigation was not finding the
truth, but to justify a decision or assumption
that had already been made, justifying
discrimination or retaliation.

41.    The Defendant breached its professional duty of Care to Mr.
Wilbur by not providing a standard of quality investigation.

42.    Defendant was not exercising due professional care, in its
execution of statutes or regulations, when the investigator
chose to ignore AUSA Cherry statements regarding information
about inspection that were factually conducted, but alleged
not conducted by the U.S. Department of Labor, ending with
Plaintiff being wrongfully charged with perjury, employee
misconduct, and employee negligence.

43.    Defendant conducted an investigation of the Area Director for
showing female co-work explicit images on a government

1        computer by the Assistant Area Director, but had the DOL OIG

2        conduct the investigation for employee misconduct.

3    44.    Defendant was not competent or knowledgeable in occupational

4        safety and health policy, rules, practices, Field Operating

5        Manual, Collective Bargaining Agreement, and other procedures;

6        as per Counsel of the Inspector General on Integrity and

7        Efficacy: Quality Standards for Investigations

8    1)   Defendant failed the following:

9            a) Qualification - Individuals assigned to conduct

10               the investigative activities must collectively

11               possess professional proficiency for the tasks

12               required.

13           b) Character — Each investigator must possess and

14               maintain the highest standards of conduct and

15               ethics, including unimpeachable honesty and

16               integrity

17           c) Independence - In all matters relating to

18               investigative work, the investigative organization

19               must be free, both in fact and appearance, from

20               impairments to independence; must be

21               organizationally independent; and must maintain an

22               independent attitude.

23           d) Executing Investigations - The investigator is a

24               fact-gatherer and allowed conjecture,

25               unsubstantiated opinion, bias, or personal

26               observations or conclusions affect work

27               assignments. He or she also has a duty to be

28

1        receptive to evidence that is exculpatory, as well

2        as incrementing.

3    e) Collection of Evidence - The validity of

4        information and evidence obtained during an

5        investigation should be verified.

6    f) Reporting - Reports (oral and written) must

7        thoroughly address all relevant aspects of the

8        investigation and be accurate, clear, complete,

9        concise, logically organized, timely, and

10       objective.

11   g) Training - Lack the Appropriate Skills: Not

12       verifying evidence, not using exculpatory

13       evidence, and not understanding observed

14       conclusions. This qualification standard

15       recognizes that proper training is required to

16       meet the need for the broad range of special

17       knowledge and skills necessary to conduct

18       investigations.

19   45.   At all times relevant to this complaint, the Defendant had a

20       duty to hire competent investigators, administrators,

21       employees, agents, and staff in order to meet its standards of

22       safe work environment for federal employees, including Mr.

23       Wilbur. The Defendant knew or should have known, that the

24       investigative officer was not properly trained, and/or

25       supervised, in a manner necessary to provide a level of

26       investigative independence that met all applicable legal

27       requirements; that demonstrate the standard and degree of

28       investigative skill required of competent Department of Labor

OIG investigators; and consistent with the expertise that the Defendant presented to the safety community at large.

46. Defendant, US DOL OIG, on June 3, 2013 spoke with Assistant United States Attorney (AUSA) John Cherry, Chief of criminal prosecution for the United States Attorney's Office for Southern District of Alabama (USAOSDAL). According to Mr. Cherry, he wouldn't seek charges against Mr. Wilbur because, "the investigation had revealed information that verified Mr. Wilbur was present at locations in which he had been alleged Mr. Wilbur was not present at said locations. Furthermore, the Defendants investigations also revealed that OSHA compliance inspections were in fact conducted by Mr. Wilbur that Mr. Wilbur was accused of not conducting." See Attachment (C)pg.6.

47. Defendant recommended the allegations to be factual, although the AUSA Cherry (Southern District Alabama) determined that Mr. Wilbur conducted the inspections. Regardless the Defendant stated otherwise to future employers, and the Office of Personnel Management.

48. Defendant initiated a biased investigation with the sole intent in malicious harm to the Plaintiff. Investigations should have been conducted in a diligent and complete manner, and reasonable steps should have been taken to ensure that pertinent issues were sufficiently resolved and to ensure that all appropriate criminal, civil, contractual, or administrative remedies were considered.

49. As a direct and proximate result of the acts of the Defendant negligence herein, Plaintiff is entitled/or claims under the

law of the Sate of Alabama. These actions caused harm to the Plaintiff.

50.    The Defendant is liable pursuant to 28 U.S.C 1346(b)(1).

### THIRD CAUSE OF ACTION
#### RETALIATORY PROSECUTION
#### (Against the United States of America for damages)

51.    Plaintiff alleges the Defendant maliciously initiated the investigation in retaliation for participating in protected activities for inappropriate conduct of management, which violated established law.

52.    Defendants conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known would have cause harm.

53.    Plaintiff incorporates by reference the allegations of the original complaint as though set forth herein, violates Defendants own internal policies.

      a) Did not protect Plaintiff from retaliation in the work place.

      b) Defendant lowered performance evaluations during the course of the investigation.

      c) Defendant did not follow and violated departmental policy and retaliated against the Plaintiff by impeding/obstructing federal employment.

      d) Defendant provided false information during OPM investigation during the employment screening process.

      e) Defendant's reliance on the investigation, directly impacted employment opportunities.

Gilooly v. Missouri Department of Human and Senior Services, 421 F.3d 734 (8th Cir. 2005).

      f) Defendant chose to release the information to a potential employer, even thou there was an issue of material fact regarding the investigative finding, constituting retaliation.

54.    At all times relevant to this complaint, the Defendant had a duty to adhere to internal, as well as external regulations, which include Federal Statues, Presidential Executive Orders and other laws designed to protect employment discrimination/retaliation in the workplace.

55.    Defendant knew or should have known that, harassment becomes unlawful where 1) it is unlawful for an employee to have to endure offensive conduct, as part or expectation to adhere to the culture, as a condition of continued employment, or 2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive, in an organization with a zero tolerance for these types of actions.

56.    Defendant violated internal policy, rule, and regulations regarding reprisals for filing a complaint, participating in an employee arbitration hearing, filing a grievance complaint, or helping a fellow employee file a discrimination complaint. See *Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee*.

57.    Defendant throughout the process, increased its torrent of abuse, to include intimidation, subpar employee evaluations,

1    retaliatory prosecution, forced resignation, and obstruction

2    while competing for federal employment.

3  58.   As a direct and proximate result of the acts of the Defendant

4    retaliatory motives herein, Plaintiff is entitled/or claims

5    under the law of the Sate of Alabama. These actions caused

6    harm to the Plaintiff.

7  59.   The Defendant is liable pursuant to 28 U.S.C 1346(b)(1)

### FOURTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against the United States of America for damages)

10  60.   Plaintiff incorporates by reference the allegations of the

11    original complaint as though set forth herein, violates

12    Defendants own internal polices, Workplace Violence Program,

13    and Collective Bargaining Agreement, which it did not follow.

14  61.   Defendant knew the repercussions would be if the release of

15    erroneous information to the Office of Personnel Management

16    (OPM) and U.S. Citizenship Immigration Services (USCIS). This

17    direct action lead to the Plaintiff being barred for 3 years

18    from federal service; proximate damage on the public sector

19    due to trust issues for Safety and Health position and needed

20    financial disclosure for high-level security position (public

21    trust) inflaming the seriousness of the allegations.

22    I.  Intentionally or with reckless disregard of the

23       consequences of inaccurate Agency investigation;

24    II. Conduct was extreme or outrageous, by presenting

25       inaccurate information to other federal agencies,

26       although the factual basis for it had eroded; made a

concise choice to disclose the information regardless of

the emotional and financial impact on Mr. Wilbur;

    a) Advanced Notice of inspections allowed by the

       Department of Labor. See Specification 3 (SF 95

       pg. 8).

    b) Out of Business - false claim of mileage. See

       Specification 2 (SF pg. 7)

    c) Perjury - providing false testimony. See

       Specification 4 (SF pg. 10)

    d) Incompliance inspection when a violation was

       present. See Specification 1 (SF 95 pg. 5)

    e) Improper use of government credit card. See

       Specification 5 (SF 95 pg. 13)

III.  As a result of the Defendant actions, the Plaintiff

    suffered severe emotional distress, financial distress,

    marital distress, fear, shame, embarrassment, anxiety,

    humiliation, anger, and grief.

IV. Defendants conduct violated public trust, and

    directly/or proximately caused that emotional distress.

    a) United States Government has an obligation to its

       citizens to place loyalty to the Constitution,

       laws and ethical principles above private gain. To

       ensure that every citizen can have complete

       confidence in the integrity of the Federal

       Government, the Defendant did not respect and

       adhere to the principles of ethical conduct set

       forth in this section, as well as the implementing

       standards contained in this part and in

supplemental agency regulations. See Standards of Ethical Conduct.

V. Defendant knew they were wrong, but they did it anyway and continued to do it continuously over the years. What does that say about discretionary functions?

62. Defendants instigated, and directed a course of extreme and outrageous conduct with the intention of causing sever humiliation, mental anguish, and emotional as well as physical distress. The Defendant acted with a careless, or reckless disregard of the probability of causing distress to the Plaintiff.

63. Plaintiff sought professional assistance from agency EAP to combat the increasing anxiety from the hostile work environment.

64. Plaintiff mentally broke down on or about May 20, 2013, he suffered humiliation in front of his peers, having his peers openly talking about him, being told that he was a liar by management, and having the agency turning a blind eye to the culture within the office.

65. During the Employee Assistance Program (EAP) session the Plaintiff broke down, he was on the verge of tears, physically nauseated, and shaking. EAP counselor called the Plaintiffs spouse to transport the Plaintiff to the emergency room.

66. Plaintiff was admitted to Mobile Infirmary Medical Center (PSYCH) medicated, counseled, and observed for a period of three.

67. Defendant knew or should have known that disclosing inaccurate information would drastically harm employment opportunities in

1    both the private/federal sectors. The Defendant provided (1)

2    negligent misstatements of a past or existing fact; (2)

3    unjustifiable reliance on those misrepresentation; and (3)

4    reliance on that information caused detrimental loss or

5    injury.

6  68.    As a direct and proximate result of the acts of the Defendant

7    malicious and ill intent to harm herein, Plaintiff is

8    entitled/or claims under the law of the State of Alabama.

9    These actions caused harm to the Plaintiff.

10  69.    The Defendant is liable pursuant to 28 U.S.C 1346(b)(1).

11    **FIFTH CAUSE OF ACTION**
    **BAD FAITH INVESTIGATION**
12    **(Against the United States of America for damages)**

13  70.    Plaintiff incorporates by reference the allegations of the

14    original complaint as though set forth herein, Defendants

15    misused the law, and violated its owns rules and regulations.

16    a) Defendant initiated the investigation, serving the

17    harasser's and employer's interests over Mr.

18    Wilbur employee rights by continually giving false

19    information and trying to intimidate him.

20    b) Defendant on or about June/July 2012 conducted

21    Climate Survey. Defendant informed Mr. Wilbur that

22    the Area Director conducted no violation, although

23    his sexually obnoxious behavior was offensive to

24    me, and was continuous during Mr. Wilbur's

25    employment.

26

27

28

c) Defendant conducted a bad faith investigation, which it used as a pretext to harass, inflict disciplinary action, and intimidate the Plaintiff.

d) Defendant conducted an antithetical investigation, misleading the facts of the allegations.

e) Mr. Wilbur forced resignation was a wrongful discharge in violation of public policy. The investigation should have been fair to everyone involved, including the accused.

f) Defendant made false reports to other government agencies.

g) Plaintiff was placed under surveillance and informed to continue workload, but not correcting any bad behavior in order to try and build a case.

71. Defendant had a duty to the Plaintiff, the Defendant breached that duty by failing to conform to the required standard of conduct, the defendant's negligent conduct was the cause of the harm to the plaintiff, and the plaintiff was, in fact, harmed or damaged.

72. Defendant at issue was unqualified in terms familiarity with the Collective Bargaining Agreement (CBA), handbooks, and Federal Operating Manual (FOM).

73. Defendant violated internal policy by not providing accurate, and verified information.

74. Defendant violated its own policies/or regulations by not conducting the investigation with independence, neutrality, and objectivity needed for an impartial investigation.

Plaintiff alleges the OIG investigator employed the assistance

of the Mobile DOL office (biased) to conduct significant portions of the investigation.

75.   Defendant was overly aggressive, biased, and unethical while conducting an investigation of Mr. Wilbur violating internal regulations.

76.   Defendant knew or should have known that lying on an official document or during an internal agency investigation violates internal policy. See also *18 U.S. Code § 1001*.

77.   Defendant failed to gather all pertinent information during the investigation, which included the use of the CBA, FOM, and Occupational Safety and Health Review Commission.

78.   Defendant suppressed information the Plaintiff of the outcome/take remedial steps. Agency did not contact Plaintiff about initial/or completion of the investigation. Plaintiff was not afforded the opportunity to refute the allegations (legal counsel), substantiated or not. See Article 5 – Rights of Employees Section 7, Part D.

79.   Defendant withheld OIG investigation findings to obstruct/or impede Plaintiff MSPB case. *See* 5 U.S.C. Sec. 552(a)(4)(B).

80.   Defendant investigation contained multiple errors alleging Plaintiff of not conducting investigations.

81.   As a direct and proximate result of the acts of the Defendant did not follow the quality of standards in regards to performing the investigation herein, Plaintiff is entitled/or claims under the law of the Sate of Alabama. These actions caused harm to the Plaintiff.

I.   Defendant failed endeavor to avoid any actions creating the appearance that they are violating the law or the

ethical standards set forth in this part. Whether
particular circumstances created an appearance that the
law or those standards have been violated shall be
determined from the perspective of a reasonable person
with knowledge of the relevant facts.

82.   The Defendant is liable pursuant to 28 U.S.C 1346(b)(1), and
entitled to relief.

### SIXTH CAUSE OF ACTION
### BREACH OF AGREEMENT
#### (Against the United States of America for damages)

83.   Plaintiff incorporates by reference the allegations of the
original complaint as though set forth herein, violates
Defendants owns rules, regulations, employee rights under
Article 35 – Harassing Conduct and Workplace Violence (CBA),
Workplace Violence Program and Collective Bargaining Agreement
(CBA)(contractual agreement) in regards to employee rights,
retaliation, competition for federal positions, and harassment
in the workplace.

   I. Council of the Inspector General on Integrity and
      Efficiency: Thoroughness — All investigations were not
      adhered to in conducting a diligent and complete manner,
      and reasonable steps were not taken to ensure that
      pertinent issues where sufficiently resolved and to
      ensure that all appropriate criminal, civil,
      **contractual**, or administrative remedies had been
      considered.

   II. OSH Act 5(a)(1): The OSHA general duty clause, Section
       5(a)(1) of the Occupational Safety and Health Act,

requires ("mandatory") that each employer furnish to each of its employees a workplace that is free from recognized hazards that are causing or likely to cause death or serious physical harm.

 a) Defendant failed to keep the workplace free of a hazard to which its employees were exposed to continuous harassment.

 b) Defendant recognized the retaliatory actions of the Director (agents) and chose to launch an investigation on the harassed (Plaintiff) for not wanting to be subjected to the culture of the agency.

 c) Defendant elected to forgo feasible and useful methods to correct the hazard.

III. Defendant has a no tolerance clause for harassment in the workplace, which the Area Director at the time of their conduct, clearly prohibit his actions and breaching the terms of the Collective Bargaining Agreement/internal policies. These actions were exhibited against three employees in the same work center.

IV. Defendant violated it's own workplace violence program.

 a) Defendant did not adhere to a clear policy that promoted a safe working environment for the Plaintiff.

 b) Defendant did not maintain a working environment that was free from violence, harassment,

intimidation and other disruptive behavior for the
Plaintiff.

    c) Defendant did not enforce/or deter harassing, and
intimidating behavior by management. These actions
went unabated.

    d) Defendants workplace violence program failed,
allowing management to act in an "intimidating or
harassing manor" including threats or other
conduct, which in any way: created a hostile
environment; impaired agency operations; or
frightened, alarmed or inhibited the Plaintiff.

    e) Defendant subjected the Plaintiff to psychological
intimidation or harassment included making
statements, which were false, malicious,
disparaging, derogatory, rude, disrespectful,
abusive, obnoxious, insubordinate, and which had
the intent to hurt the Plaintiff.

84.    Defendant violated Article 5 - Employee Rights

    I.  Each employee of the Department has the right, freely
and without fear of penalty or reprisal, to form, or
assist the NCFLL or to refrain from any such activity.
Employees shall be protected in the exercise of this
right.

    a) Defendant launched an internal investigation based
on ulterior motives, reprisal for participating in
an arbitration hearing, and filing numerous
complaints regarding obnoxious behavior of
managers.

FTCA - Federal Tort Claims Act - 32

      b) Defendant tried to have Plaintiff, on numerous occasions, cite an employer for violations that did not exist, for the sole purpose of obtaining a high office of regional quotas.

      c) Defendant conducted internal investigation to harass, embarrass, incriminate, and intimidate the Plaintiff, without adhering to Performance Management System (CBA).

      d) Plaintiff who was subjected to an internal Departmental administrative investigation in which he was entitled to representation under Subsection C of this section. Plaintiff was not notified of the disposition of said investigation. Article 5 Section 7 part (D), *Weingarten* rights violated.

      e) Plaintiff had a right to fair representation/or counsel at the onset of the investigation.

85.    Defendant failed to follow internal policy/contractual agreements in regards to Plaintiff Privacy Rights.

     I. Plaintiff like all federal employees and applicants for employment should have received fair and equitable treatment in all aspects of personnel management without regard to political affiliation, race, color, religion, national origin, sex, marital status, age, or handicapping condition, and with proper regard for their privacy and constitutional rights.

     II. Defendant released false information about the Plaintiff that was intended to impede employment for another

federal agency/or private sector, which resulted drastic
consequence.

    a) The Defendant reliance on information about the
       Plaintiff was released to the Office of Personal
       Management, US Citizenship and Immigration
       Services, and other employment venues.

    b) The Defendants publication of information was made
       intentionally, and with malice.

    c) The perpetrator acted with reckless disregard for
       the false nature of the information published

    d) The published information puts the Plaintiff in a
       false, untrustworthiness, incompetent, and
       misleading light.

    e) The information was offensive, humiliating,
       disparaging, embarrassing and cause serious
       financial hardship to the Plaintiff or to any
       reasonable person.

86.    Defendant violated Article 43 – Performance Management System.
Section 5 – Improving Unsatisfactory Performance.

   I. Any employee not meeting the performance standard of one
    or more critical element will be promptly notified.

    a) Any employee not meeting the performance standards
       of one or more critical elements will be promptly
       notified.

    b) Informal efforts by the supervisors will include
       guidance to the employee regarding specific
       actions, which should be taken to improve
       performance.

c) Defendant bypassed administrative remedies, initiating prosecutorial actions against the Plaintiff.  Section 5 Part (B) states, "No performance-based action (5 CFR 432) will be proposed unless the employee is given at least 90-day period of time in which to correct any deficiencies noted and a detailed explanation of the work to be accomplished in the 90-day period to correct performance deficiencies. To this end, the Performance Improvement Plan will be utilized."

d) Performance Plan the Plaintiff received did not include any discrepancies or any comments for improvements.

87.    As a direct and proximate result of the acts of the Defendant egregiously violated Plaintiff rights under the Collective Bargaining Agreement/unfair labor practices (NLRA) herein, Plaintiff is entitled/or claims under the law of the Sate of Alabama. These actions caused harm to the Plaintiff.

88.    The defendant's actions or inaction caused harm to the plaintiff and is liable pursuant to 28 U.S.C 1346(b)(1), and entitled to relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Joseph Wilbur Jr. does hereby pray that judgment be entered in his favor and against the sole Defendant. The Plaintiff has suffered enough and wants his life back from the United States of America as follows:

1. Defendant destructed his livelihood, Lost wages, pain and suffering, future employment, continuing intentional emotional distress, and loss of enjoyment of life, claiming 3,500,000.00 and;

2. Cost and attorney fees incurred in this civil action, together with such further and additional relief at law or in equity that this court may deem proper.

3. A permanent injunction preventing the Department of Labor and its respective agents, directors, employees, sister agency's, or attorneys, and those in active concert or participation with them from retaliatory actions in the future against the Plaintiff.

   a. Letter of Apology

   b. Disciplinary action taken against Mr. Joseph Roseler

      1. Reduction in Grade or Pay, Removal from the Federal Service

Dated this [day] of [Month], [year]

_____

s/Joseph Wilbur Jr. *PRO SE*