# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| JOSEPH WILBUR, JR., | : | |
| Plaintiff, | : | |
| vs. | : | Civil Action No. 1:17-cv-00276-KD-C |
| UNITED STATES OF AMERICA, | : | |
| Defendant. | : | |

## CORRECTED REPORT AND RECOMMENDATION[1]

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen. L.R. 72(a)(2)(S), on Defendant United States of America's Motion to Dismiss and Supporting Memorandum ("motion to dismiss"), (Doc. 25), which was filed on November 3, 2018.  Upon consideration of the parties' pleadings, (Docs. 25, 26, 28, 30, & 33), and those arguments presented at the hearing in regard to Defendant's motion to dismiss, (*see* Docs. 35, 39, & 43), it is **RECOMMENDED** Defendant's motion to dismiss, (Doc. 25), be granted.

## FACTUAL BACKGROUND

Plaintiff claims, in November or December 2011, he was employed by the Occupational Safety and Health Administration ("OSHA") as a compliance officer in

---

[1] The Court's Report and Recommendation, (Doc. 45), which was entered on March 20, 2018, was entered in error and is therefore **WITHDRAWN**.  It is **REPLACED** by this Corrected Report and Recommendation and the right of the parties to file objections within fourteen (14) days of service is preserved.

the Mobile, Alabama, office. (Doc. 9, at 2). Plaintiff claims that the Area Director ("AD") for the Mobile, Alabama, office performed crude and sexually obnoxious behavior in his office in front of him. (Doc. 9, at 2). Plaintiff reported the AD's actions to the NCFLL union steward, who informed Plaintiff the AD was attempting to motivate him. (Doc. 9, at 2). Plaintiff claims in January 2012, a new employee with OSHA at its Mobile, Alabama, office was subjected to similar crude and sexually obnoxious behavior by the AD in the copier room. (Doc. 9, at 3). This time, the AD's actions were reported to the Assistant AD ("AAD"), but the AD's actions went unpunished. (Doc. 9, at 3).

Plaintiff claims, in July 2012, he contacted the Regional Office in regard to a climate survey and spoke to an employee, to whom he disclosed the actions of the AD and his displeasure with those actions. (Doc. 9, at 3). The employee, after a brief nap during the recitation, tried to convince Plaintiff that the AD's actions did not constitute sexual harassment and were a demonstration of the AD's flexibility. (Doc. 9, at 3). The employee, then, walked into the AD's office and closed the door. (Doc. 9, at 3). Later, the employee wrote a report that stated Plaintiff did not witness acts of sexual harassment or lewd behavior by the AD. (Doc. 9, at 3).

Plaintiff claims, in December 2012, a new, female employee was called to the AD's office and the AD showed the female employee graphic pictures on his computer. (Doc. 9 at 4). The female employee texted Plaintiff a message that stated the AD showed her explicit pictures that made her feel uncomfortable and she needed Plaintiff's help with filing a complaint with the Equal Employment

2

Opportunity Commission ("EEOC"). (Doc. 9., at 4). Plaintiff assisted the female employee with contacting certain people, emailing the Regional Director in Atlanta, Georgia, and sending a copy of the email to their union steward. (Doc. 9, at 4). In the email, Plaintiff stated his disdain for the AD's actions and the culture of the Mobile, Alabama, office. (Doc. 9, at 4). Subsequently, the AD was investigated by the Department of Labor ("DOL"), and the AAD conducted the investigation. (Doc. 9, at 4). The AAD did not find any inappropriate materials on the AD's computer. (Doc. 9, at 4). The female employee was, later, forced to resign because she violated agency policy. (Doc. 9, at 4).

Plaintiff claims, on January 3, 2013, he sent an email in regard to the code of conduct and stated his disgust with the culture in the Mobile, Alabama, office. (Doc. 9, at 4). He also claims, on February 27, 2013, the AAD warned him not to cause problems in the office and told Plaintiff he could help him assume a management position. (Doc. 9, at 4).

Plaintiff claims, on March 7, 2013, he was verbally admonished because he did not conduct an inspection. (Doc. 9, at 5). Plaintiff claims, on June 20, 2013, he received an unfavorable mid-year performance evaluation, which he refused to sign. (Doc. 9, at 5-6). Plaintiff claims, on June 4, 2013, he sent a letter to former United States Senator Jeff Sessions in regard to the culture of the office. (Doc. 9, at 6). Plaintiff claims, in July 2013, he sent his resignation letter to the DOL due to a hostile work environment. (Doc. 9, at 6).

Plaintiff claims, on February 5, 2015, notice was sent to him that the United States Citizenship and Immigration Services ("USCIS") rescinded its offer to him for a position as a Safety and Health Manager; however, he was on military deployment when the notice was originally sent to him and did not receive the notice until September 2015. (Doc. 9, at 6; Doc. 42, at 2). In the notice, USCIS informed Plaintiff it rescinded the offer because of a DOL investigative report, in which was listed acts of misconduct by him and was closed on August 27, 2013. (Doc. 1-5, at 2; Doc. 9, at 6-7). On October 19, 2016, Plaintiff mailed an administrative claim under the Federal Torts Claim Act ("FTCA") to the DOL Tort Claims Unit, which received the claim on October 21, 2016. (Doc. 9, at 8).

## PROCEDURAL BACKGROUND

*Pro se* Plaintiff filed his Complaint in this Court on June 19, 2017, in which he brought claims, pursuant to the FTCA, of abuse of process, negligence, retaliatory prosecution, bad faith investigation, and breach of agreement. (Doc. 1). On June 20, 2017, Plaintiff filed his Motion for Leave to Proceed Without Prepayment of Fees, (Doc. 2), which the Court granted on June 22, 2017, and ordered the Clerk of Court to serve a copy of the summons and Complaint on Defendant pursuant to 28 U.S.C. § 1915(d) and Rule 4, Federal Rules of Civil Procedure, (hereinafter "FRCP" followed by the Rule number), (Doc. 3). Defendant was served on June 26, 2017, and per the Court's docket, its response was due by August 25, 2017. (Docs. 6).

4

On July 20, 2017, Plaintiff filed his Motion to Amend Complaint, (Doc. 8, at 1-2), Motion to Appointment of Counsel, (Doc. 8, at 2-3), and Motion to Stay of Eviction, (Doc. 8, at 3-4). On July 21, 2017, Plaintiff filed his Amended Complaint, in which he brought claims of negligence and intentional infliction of emotional distress under the FTCA. (Doc. 9). On August 9, 2017, the Court granted, pursuant to FRCP 15(a)(2), his Motion to Amend Complaint, (Doc. 10, at 1-3); however, the Court denied his Motion for Appointment of Counsel and Motion to Stay Eviction, (Doc. 10, at 3-4).

On August 17, 2017, the Court ordered the Clerk of Court to serve a copy of the summons and Amended Complaint on the Defendant. (Doc. 17). Defendant was served the summons and Amended Complaint on August 24, 2017, which made its answer due on October 23, 2017. (Doc. 19). On October 17, 2017, Defendant filed its Second Opposed Motion to Extend Responsive Pleading Deadline, (Doc. 22), that the Court granted and the deadline for Defendant to file its responsive pleading was extended to November 3, 2017, (Doc. 24).

On November 3, 2017, Defendant filed its Motion to Dismiss and Supporting Memorandum, (Doc. 25), to which Plaintiff filed his Opposition to Motion to Dismiss, (Doc. 26), and supplements thereto, (Docs. 27-30). On November 9, 2017, the Court ordered Defendant to file its reply by November 15, 2017, and set the matter for oral argument before the undersigned, (Doc. 31), which was reset, (Docs. 35 & 39). Defendant filed its reply on November 15, 2017, (Doc. 33), and the matter came before the undersigned for oral argument on November 30, 2017, (Doc. 43).

5

Before the hearing, Plaintiff filed his Motion to Strike, (Doc. 32), in which he motioned the Court to strike, pursuant to FRCP 12(f), Defendant's motion to dismiss, (Doc. 25), which the Court denied, (Doc. 44, at 1-2); he filed his Motion to Leave, (Doc. 36), in which he motioned for leave to file an amended complaint and waive PACER fees, and he filed his Withdraw Motion to Leave, (Doc. 38), in which he requested to withdraw his request to file an amended complaint and have PACER fees waived, that the Court granted insofar as he requested leave to file an amended complaint and denied insofar as he requested the Court to waive PACER fees, (Doc. 44, at 2); and he filed his Supplement, (Doc. 42), in which he motioned the Court to file a supplement to his response to Defendant's motion to dismiss to address equitable tolling of his claim, that the Court granted and took under submission, (Doc. 44, at 2).

### *Pro Se* Litigants

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannembaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). "Courts do and should show a leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education." *GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled in part on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise

deficient pleading in order to sustain an action." *GJR Invs., Inc.*, 132 F.3d at 1369 (internal citations omitted).

## STANDARD OF REVIEW

### FRCP 12(b)(6)

Pursuant to FRCP 12(b)(6) a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [*Twombly*, 550 U.S.] at 570, 127 S. Ct. [at] 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556, 127 S. Ct. [at] 1955."). Since a FRCP 12(b)(6) motion questions the legal sufficiency of a complaint, in assessing the merits of a FRCP 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 1276, 113 L. Ed. 2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990); *but see also Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. [at] 1955."). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 1382, 103 L. Ed. 2d 628 (1989). Obviously, therefore, a district court may not resolve factual disputes when adjudicating a motion to dismiss. *Page v. Postmaster Gen. and Chief Exec. Officer of the U.S. Postal Serv.,* 493 F. App'x 994, 995 (11th Cir. 2012) (citing, among other cases, *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990) (indicating that, under Rule 12(b)(6), the existence of disputed material facts precludes a district court from granting a motion to dismiss)). "'When considering a motion to dismiss . . . the court limits its consideration to the pleadings and all exhibits attached thereto.'" *Thaeter v. Palm Beach Cty. Sheriff's Office,* 449 F.3d 1342, 1352 (11th Cir. 2006), quoting *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam); *see also Reese v. Ellis, Painter, Ratterree & Adams, LLP,* 678 F.3d 1211, 1215-16 (11th Cir. 2012) ("Because the Ellis law firm's dunning letter and enclosed documents were attached to the Reeses' complaint as an exhibit, we treat them as part of the complaint for Rule 12(b)(6) purposes.").

### FRCP 12(b)(1)

[FRCP] 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds. *Morrison v. Amway Corp.*, 323 F.3d 920 925 n.5 (11th Cir. 2003). Facial challenges to subject matter jurisdiction are based solely on the allegations in the complaint. When considering such challenges, the court must, as with a [FRCP] 12(b)(6) motion, take the complaint's

8

allegations as true. *Id.* However, where a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits. *Id.*

*Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).

## ANALYSIS

Defendant moves to dismiss Plaintiff's claims pursuant to FRCP 12(b)(1) and (6) because, it argues, this Court lacks subject-matter jurisdiction. (Doc. 25, at 1). Accordingly, the Court will treat Defendant's motion to dismiss as a facial challenge to the Court's subject matter jurisdiction and treat Plaintiff's factual allegations as true. Defendant argues Title VII of the Civil Rights Act, 42 U.S.C. § 2000, *et seq.*, ("Title VII") and the Civil Service Reform Act, 5 U.S.C. § 1101, *et seq.*, ("CSRA") provide the exclusive remedy for Plaintiff's employment claims, Plaintiff failed to file his FTCA claims in regard to his OSHA employment within the time limitations of the statute, and Plaintiff's claims that are related to the DOL's release of the investigative report are barred by the discretionary-function exception to the FTCA. (Doc. 25, at 2). Plaintiff's claims against Defendant sound in negligence and intentional infliction of emotional distress under the FTCA.[2] (Doc. 9, at 1-2). The Court will, first, address Defendant's argument that Plaintiff's claims in regard to his OSHA employment were not filed within the applicable time limitations.

> In order to bring a tort action against the United States, a plaintiff must act within the two-year statute of limitations period established by the FTCA. The applicable provision dictates that "[a]

---

[2] Since the Court will analyze the Plaintiff's claims under the FTCA, it does not address Defendant's first argument that Title VII and the CSRA provide the exclusive remedy for Plaintiff's employment claims.

9

> tort against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). The general rule it that a claim under the FTCA accrues at the time of injury. *United States v. Kubrick*, 444 U.S. 111, 120, 100 S. Ct. 352, 358, 62 L. Ed. 2d 259 (1979).

*Diaz v. United States*, 165 F.3d 1337, 1339 (11th Cir. 1999). In this case, Plaintiff's claims were mailed to the appropriate Federal agency in October 2016. (Doc. 9, at 8); any claims that accrued prior to October 2014 are, therefore, time-barred. The only action taken by the Defendant that Plaintiff claims occurred after October 2014 is the notification from USCIS, which was sent to him on February 5, 2015, that the agency rescinded his employment offer because the DOL disclosed its investigative report to the USCIS. (Doc. 9, at 6).[3] Therefore, the basis for Plaintiff's FTCA claims of negligence and intentional infliction of emotional distress are limited to those events that occurred after October 2014, the focus of which are the DOL's disclosure of the investigative report to the USCIS.

---

[3] Plaintiff argues the continuing violation doctrine applies in this case to the DOL's investigation and subsequent communication of the results of that investigation to the USCIS, (Doc. 26, at 4); however, the Court finds those acts were discrete acts, which do not extend the limitations period for the DOL's investigation, *see Cntr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006) ("The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period. . . . First, this Court has distinguished between the continuing effects of a discrete violation and continuing violations: "In determining whether a discriminatory employment practice constitutes a continuing violation, this Circuit distinguishes between the present consequence of a one time violation, which does not extend the limitations period, and the continuation of that violation into the present, which does." *City of Hialeah v. Rojas*, 311 F.3d 1096, 1101 (11th Cir. 2002) (quotations omitted); *see also Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003). . . . Second, we have limited the application of the continuing violation doctrine to situations in which a reasonably prudent plaintiff would have been unable to determine that a violation had occurred. "If an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine[.]" *Hipp[ v. Liberty Nat'l Life Ins. Co.*], 252 F.3d [1208,] 1222 (quoting *Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1415 n.6 (10th Cir. 1993))).

Having limited the scope of events that are the basis of Plaintiff's claims, the Court will, now, address Defendant's argument that Plaintiff's claims are barred by the discretionary-function exception to the FTCA.

The FTCA grants federal district courts exclusive jurisdiction over claims for damages against the United States arising from personal injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. §1346(b)(1). Specifically, "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

But the FTCA exempts from liability torts resulting from "discretionary functions":

> The provisions of this chapter and section 1346(b) of this title shall not apply to –
>
> (a)   Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretionary involved be abused.

28 U.S.C. § 2680(a). This exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. Varig Airlines*, 467 U.S. 797, 808, 104 S. Ct. 2755, 2762, 81 L. Ed. 2d 660 (1984). This exception must be strictly construed in favor of the Government, and if it applies, federal courts lack subject-matter jurisdiction over the claims. *See U.S. Aviation Underwriters, Inc. v. United States*, 562 F.3d 1297, 1299 (11th Cir. 2009); *JBP Acquisitions* [*v. United States*], 224 F.3d [1260,] 1263 [(11th Cir. 2000)].

In evaluating whether the discretionary-function exception applies, we first "must determine exactly what conduct is at issue." *Autery v. United States*, 992 F.2d 1523, 1527 (11th Cir. 1993). Courts then apply the two-step test developed by the Supreme Court in *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 108 S. Ct.

11

> 1954, 100 L. Ed. 2d 531 (1988), and *United States v. Gaubert*, 499 U.S. 315, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991). *See U.S. Aviation Underwriters*, 562 F.3d at 1299.
>
> First, we consider whether the challenged conduct "is a matter of choice for the acting employee." *Berkovitz*, 486 U.S. at 536, 108 S. Ct. at 1958. "[C]onduct cannot be discretionary unless it involves an element of judgment or choice." *Id*. Challenged conduct is not discretionary "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because "the employee has no rightful option but to adhere to the directive." *Id*. at 536, 108 S. Ct. at 1958-59. . . .
>
> If the conduct involves an element of judgment and is discretionary, the court "must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id*. at 536, 108 S. Ct. at 1959. As the Supreme Court has explained, the exception is designed to prevent "judicial second guessing" of decisions "grounded in social, economic, and political policy." *Id*. at 536-37, 108 S. Ct. at 1959 (quoting *Varig Airlines*, 467 U.S. at 814, 104 S. Ct. at 2764-65). Accordingly, the discretionary-function exception "protects only governmental actions and decisions based on considerations of public policy." *Id*. at 537, 108 S. Ct. at 1959; *see also Gaubert*, 499 U.S. at 323, 111 S. Ct. at 1274.
>
> In *Gaubert*, the Supreme Court further elaborated on the discretionary-function exception by linking the two parts of the test with a presumption: "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Governmental agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." 499 U.S. at 324, 111 S. Ct. at 1274. But importantly, the Court observed that some otherwise-discretionary acts are "obviously" outside the scope of the discretionary-function exception, citing the example negligently driving an automobile on official business. *Id*. at 325 n.7, 111 S. Ct. at 1275 n.7. For example, the Court explained, "[a]lthough driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy." So "[t]he discretionary function exception applies only to conduct that involves the *permissible exercise of policy judgment*." *See Berkovitz*, 486 U.S. at 539, 108 S. Ct. at 1960 (emphasis added).

*Swafford v. United States*, 839 F.3d 1365, 1369-70 (11th Cir. 2016).

Defendant cites to the Federal Register to support its argument that the DOL's decision to disclose the investigative report is within the scope of the discretionary-function exception. (Doc. 25, at 13). Specifically, the regulation, which became effective on November 10, 2003, states:

> A [DOL] record from a system of records *may* be disclosed, as a routine use, to a federal, state, local, foreign or international agency, for their use in connection with such entity's assignment, hiring or retention of an individual, issuance of a security clearance, reporting of an investigation of an individual, letting of a contract or issuance of a license, grant or other benefit, to the extent that the information is relevant and necessary to such agency's decision on the matter.

Privacy Act of 1974; Publication of Amendments to Existing Systems of Records, 68 Fed. Reg. 54,012, 54,014 (Sept. 15, 2003) (emphasis added). In accordance with the language of the regulation, the DOL's decision to disclose the investigative report to the USCIS, was discretionary and, therefore, falls within the discretionary-function exception. Plaintiff has not claimed enough to rebut the presumption that the DOL's decision was grounded in policy when it exercised its discretion.

## CONCLUSION

Accordingly, it is **RECOMMENDED** the Court **GRANT** Defendant's motion to dismiss, (Doc. 25), and **DISMISS WITH PREJUDICE** Plaintiff's claims against Defendant on the basis that they are time barred or fall within the discretionary-function exception to the FTCA.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this corrected report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this

recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4.  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this the 6th day of April 2018.

                               s/WILLIAM E. CASSADY
                               **UNITED STATES MAGISTRATE JUDGE**